Nicholas Kittleson
Kittleson Law Office, LLC
5976 Muirwood Drive
Anchorage, Alaska 99502
(907) 345-0830
nicholas@gci.net
Attorney for the Complainant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Denaly McAlister,<br><br>               Plaintiff,<br><br>               v.<br><br>State of Alaska, Department of Public Safety, Grant Miller, Brent Hatch, Lucas Altepeter, Nathan Duce, Sawyer Philbrick, Emily McArdle, and Taumaoe Malaki<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:23-cv-00029-HRH<br>) |

COMPLAINT & DEMAND FOR JURY TRIAL

(42 U.S.C. §2000e-2(a)(1), §2000e-2(a)(2), §2000e-3(a), §1981, §1983 and §1985)

Comes now Denaly McAlister, by and through counsel Nicholas Kittleson and alleges and complains as follows:

PARTIES

1. Ms. McAlister is a person of mixed race. Her mother is Yupik Eskimo and her father is Caucasian. Ms. McAlister identifies as an Alaska Native woman. Ms. McAlister was residing in Medford, Oregon when she applied for a position with

the State of Alaska, Department of Public Safety.  She moved to Sitka, Alaska to participate in the Alaska State Trooper's Training Academy beginning on July 25, 2021.  She remained a resident of Sitka, Alaska until she was terminated on August 6, 2021.  She is currently a resident of the State of Oregon.

2. The defendant State of Alaska, Department of Public Safety ("DPS") is a division of the government of the State of Alaska.  DPS operates a training center in Sitka, Alaska known as the "Training Academy".  The DPS employs more than 500 people.

3. The defendant Lieutenant Grant Miller is believed to be an Alaska resident.  DPS employed Lt. Miller as the Academy Commander at the Training Academy in Sitka.

4. The defendant Corporal Brent Hatch is believed to be an Alaska resident.  DPS employed Cpl. Hatch as one of the instructors at the Training Academy in Sitka.

5. The defendant Corporal Lucas Altepeter is believed to be an Alaska resident.  DPS employed Cpl. Altepeter as one of the instructors at the Training Academy in Sitka.

6. The defendant Corporal Nathan Duce is believed to be an Alaska resident.  DPS employed Cpl. Duce as one of the instructors at the Training Academy in Sitka.

7. The defendant Sawyer Philbrick is believed to be an Alaska resident.  DPS employed Mr. Philbrick as a Trainee Recruit at the Training Academy in Sitka.

8. The defendant Emily McArdle is believed to be an Alaska resident. DPS employed Ms. McArdle as a Trainee Recruit at the Training Academy in Sitka.

9. The defendant Taumaoe Malaki is believed to be an Alaska resident. DPS employed Ms. Malaki as a Trainee Recruit at the Training Academy in Sitka.

## JURISDICTION

10. This Court has jurisdiction of the matter under the doctrine of federal question: 8 U.S.C. §1332; §1334(a)(4) and FRCP 8(a)(1).

11. This Court has jurisdiction of the tort claims under Federal Supplemental Jurisdiction: 28 U.S.C. §1367.

12. Ms. McAlister received her right to sue letter from the E.E.O.C. on November 16, 2022. She has fulfilled all jurisdictional requirements to assert her claims.

## VENUE

13. Venue with this Court is proper under 28 U.S.C. §1391(e).

## FACTS COMMON TO ALL CLAIMS

14. Ms. McAlister's race is Alaska Native. Ms. McAlister disclosed her race to the defendants as part of her application process in her letter of interest dated November 15, 2020.

15. As part of the background check, Ms. McAlister was required to disclose history, family and places she lived. She listed Mountain Village, Kake, and Kaktovik which are all nearly exclusively populated by Alaska Native people.

16. The defendants knew Ms. McAlister was Alaska Native. Background investigator Jane Shied wrote an email to Ms. McAlister asking for more information on December 8, 2020, recognizing that Ms. McAlister is an "indigenous female from Alaska."

17. On March 27, 2021, State of Alaska, Department of Public Safety notified Ms. McAlister that she had passed the physical fitness tests.

18. On April 9, 2021, Ms. McAlister was required to participate in an in-person interview in Anchorage with defendant State of Alaska, Department of Public Safety's employees. During the interview she was also required to answer questions which included her history of living in Native villages in Alaska.

19. Later that day Ms. McAlister was required to complete additional paperwork. The paperwork required her to identify her race/ethnicity. She checked the box that she is Alaska Native.

20. On April 10, 2021, Ms. McAlister was required to participate in a polygraph test at the State of Alaska, Department of Public Safety's office in Anchorage. Following the test she was informed that she passed.

21. On May 7, 2021, Ms. McAlister was hired as a State Trooper Recruit by the State of Alaska, Department of Public Safety. DPS determined Ms. McAlister was qualified for the position. She received her hire letter shortly after May 10, 2021, stating that her appointment into the position was effective July 25, 2021.

22. On June 3, 2021, Lt. Grant Miller sent Ms. McAlister a letter informing her that she had been accepted in Alaska's law enforcement training program. The packet included a form that asked Ms. McAlister to disclose whether she is Alaska Native or American Indian. She returned the form with the box checked "YES." One of the forms asked her to acknowledge that anyone caught lying, stealing or cheating on an examination or other assignment or caught helping another student to cheat will be dismissed from the academy.

23. Ms. McAlister began working for the State of Alaska, Department of Public Safety as an Alaska Wildlife Trooper Recruit on July 25, 2021.

24. On Ms. McAlister's first day at the Training Academy, July 25, 2021, Lieutenant Miller gave an oral presentation to the recruits. As part of the presentation, he told them that anyone caught lying, stealing or cheating would be removed from the program. Students were also instructed to stay out of the rooms of the opposite gender.

25. The recruits were divided into three squads, Alpha, Bravo and Charlie. Ms. McAlister was assigned to Bravo squad. Caucasian male recruit Sawyer Philbrick was also assigned to Bravo squad.

26. On or about July 29, 2021, Sawyer Philbrick came into the female wing of the dormitories during free time. The Academy guidebook states that unless specifically authorized, recruits are not permitted in the rooms or restrooms of the opposite sex. Ms. McAlister was taking a nap for 10-15 minutes while her

McAlister v. Alaska Department of Public Safety
Complaint - 5
Case 3:23-cv-00029-ACP     Document 1     Filed 02/09/23     Page 5 of 22

roommates went to go do laundry and study. Later Ms. McAlister met up with her roommates and other recruits. Mr. Philbrick was there and asked Ms. McAlister how her nap was. Ms. McAlister's roommates Taumaoe Malaki and Annie Grossman did not say anything about Ms. McAlister taking a nap. Mr. Philbrick walked into the female wing of the dormitory without announcing himself to know Ms. McAlister was napping.

27. On July 31, 2021, the recruits were given an assignment to write an autobiography. Ms. McAlister completed the assignment on August 2, 2021. In it, Ms. McAlister made several references to her Yupik Eskimo heritage. Cpl. Hatch read the assignment and provided it to Lt. Miller.

28. On August 3, 2021, Ms. McAlister and another female recruit, Taumaoe Malaki, were subject to sexual harassment when Caucasian male recruit Sawyer Philbrick entered the women's locker room unannounced while the women were undressed. Ms. McAlister and Ms. Malaki reported through their chain of command and were interviewed by the training facility staff, including Corporal Brent Hatch, Corporal Nathan Duce, Corporal Boyd Branch and Lieutenant Grant Miller. Corporal Lucas Altepeter was also involved when the female recruits were briefed about the situation later the same day. During these meetings, Ms. McAlister reported the same Caucasian male recruit had inquired previously about a nap that she had taken in the women's dorm, another location he was not permitted without authorization.

29. Ms. McAlister felt fear that Mr. Philbrick could do anything he wanted with respect to invading her privacy when the State of Alaska, Department of Public Safety, Grant Miller, Brent Hatch, Lucas Altepeter and Nathan Duce took insufficient (or possibly no) action against Mr. Philbrick, including failing to remove him from the training program or even the Bravo squad. Mr. Philbrick suffered no appreciable consequence that Ms. McAlister could see that would prevent him from having access to her at any time.

30. On August 6, 2021, a squad competition was called at an outdoor location called "the grinder." Squads were tasked with running across the grinder and assuming pushup position next to the corporals. The corporals would give a spelling word and the recruits had to spell the word using the police phonetic alphabet ("Alpha", "Bravo","Charlie", "Delta", etc.)

31. Part way through the competition Corporal Hatch yelled to the recruits that they were not to be sharing their words with teammates. At no time did Ms. McAlister share her words with her teammates.

32. During one of her runs, Ms. McAlister misspelled the word "marijuana". She berated herself under her breath for missing the word. She did not give the word to anyone.

33. On one of her runs, Ms. McAlister was asked by Cpl. Hatch whether she was sharing the spelling words. She told him, "No sir, I am not." He asked her again.

She responded, "No sir, I am not." Cpl. Altepeter was with Cpl. Hatch during this exchange.

34. After the competition, Cpl. Hatch asked everyone to write on a 3x5 card whether 1) they heard anyone talking about the spelling words, 2) they talked with anyone about the spelling words, and 3) if they were soliciting with others about the spelling words. The recruits handed the completed 3x5 cards to Cpl. Hatch. Ms. McAlister answered honestly "no" to each question.

35. After handing in their cards, several recruits were called in to speak with Cpls. Altepeter and Duce. Ms. McAlister and the only other Alaska Native recruit, Cody Paniptchuk, were among the trainees that were called in.

36. When called in, Cpl. Altepeter asked Ms. McAlister why she lied on her 3x5 card. Ms. McAlister told Cpl. Altepeter and Cpl. Duce she did not lie. The only time she said a word out loud was to chastise herself for missing it. Cpl. Altepeter would not let Ms. McAlister finish her explanation. He continuously interrupted her. He accused Ms. McAlister of lying or having a psychotic break. From time to time, the two men would leave Ms. McAlister alone on the room for periods of approximately a half an hour. Then they would return and Cpl. Altepeter would start again with the accusations.

37. Cpl. Duce witnessed the whole event and never stopped Cpl. Altepeter from interrogating Ms. McAlister or otherwise objected that Cpl. Altepeter's behavior toward Ms. McAlister was inappropriate.

McAlister v. Alaska Department of Public Safety
Complaint - 8
Case 3:23-cv-00029-ACP    Document 1    Filed 02/09/23    Page 8 of 22

38. After keeping her isolated in the interrogation room for several hours, Cpl. Altepeter threatened that if she did not confess, he was going to order a psyche evaluation. Ms. McAlister understood that she was not going to be allowed to leave until she agreed with the accusations. So finally she said, "Sure, whatever." when Cpl. Altepeter repeated the accusations.

39. Cpl. Altepeter told Ms. McAlister that Mr. Paniptchuk was also going to be dismissed as well for dishonesty. Mr. Paniptchuk had not yet been interviewed.

40. On August 6, 2021, Ms. McAlister's employment was terminated based on a false claim that she had cheated during a competition earlier that day and lied about it. Ms. McAlister did not cheat during the competition and did not lie on her 3x5 card.

41. On August 6, 2021, Mr. Panipchuk, was also accused of cheating during the competition and lying on his 3x5 card. His employment was likewise terminated.

42. Eighteen other recruits who are not Alaska Native admitted to engaging in some form of cheating during the competition. Many were not investigated and none were terminated despite the DPS's written policy that termination is automatic for cheating.

## CLAIM I

## VIOLATION OF TITLE VII – DISPARATE TREATMENT IN HIRING AND PROMOTION, COMPENSATION AND TERMS, CONDITIONS AND PRIVILEGES OF EMPLOYMENT – RACE DISCRIMINATION

43. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

44. The defendant State of Alaska, Department of Public Safety, acting through its agents discriminated against Ms. McAlister on the basis of race in compensation, terms conditions or privileges of employment.

45. Ms. McAlister and Mr. Panipchuck, the only two Native Alaskan recruits, were subjected to unequal treatment when dismissed from their positions upon false allegations of cheating and lying.

46. Similarly situated recruits who are not Native Alaskan admitted they cheated. They were not removed.

47. Sawyer Philbrick, a Caucasian male, was not dismissed from the academy following his violations of the rules by entering female dorm and locker rooms.

48. Ms. McAlister was harmed by the discrimination through loss of her position, including the compensation and benefits, the costs incurred in participating in the training and social and emotional impact of losing her position and livelihood. The termination prevents her from working in her profession of choice - law enforcement.

## CLAIM II

VIOLATION OF TITLE VII – DISPARATE TREATMENT IN HIRING AND PROMOTION, COMPENSATION AND TERMS, CONDITIONS AND

PRIVILEGES OF EMPLOYMENT – SEX DISCRIMINATION AND

HARASSMENT

42 U.S.C. §2000e-2(a)(1)

49. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

50. The defendant State of Alaska, Department of Public Safety, acting through its agents discriminated against Ms. McAlister on the basis of sex in compensation, terms conditions or privileges of employment.

51. Ms. McAlister was subjected to two disturbing incidents involving a Caucasian male recruit, Sawyer Philbrick, entering areas of the academy building that are prohibited by the rules of conduct, including the female dormitory and the female locker room.

52. Ms. McAlister was asleep when Mr. Philbrick entered the female dormitory. She learned he was there because he asked her about her nap.

53. The second incident involved Mr. Philbrick taking a deliberate act to view Ms. McAlister and the other female recruits nude when he entered the women's locker room without announcing himself. Ms. McAlister was in the process of changing into her swimsuit and was undressed when he entered.

54. When Mr. Philbrick walked into the women's locker room he saw and acknowledged Ms. McAlister. When Ms. McAlister saw Mr. Philbrick, she scrambled to get behind cover.

55. Ms. McAlister felt violated by both incidents.

56. Ms. McAlister was subjected to a hostile work environment and suffered, anger, embarrassment, humiliation and fear regarding Mr. Philbrick's ability to access her when at her most vulnerable (asleep/undressed) with apparent impunity.

57. Mr. Philbrick's violations of the code did not result in termination of his employment or even removal from the Bravo squad.

58. Ms. McAlister informed the defendants State of Alaska, Department of Public Safety, Grant Miller, Brent Hatch, Lucas Altepeter, Nathan Duce through the chain of command as required by Academy policy. Each of these defendants knew about the incidents.

59. Defendants State of Alaska, Department of Public Safety, Grant Miller, Brent Hatch, Lucas Altepeter, Nathan Duce had a duty to express strong disapproval and to develop appropriate sanctions for the sexual harassment, and to end the sexually hostile work environment.

60. The defendants negligently failed to protect Ms. McAlister by removing Mr. Philbrick from the ability to continue to harass her. Instead, the defendants took tangible employment action against Ms. McAlister by terminating Ms. McAlister's employment three days later.

61. The continued presence of Mr. Philbrick on the worksite and in the same squad as Ms. McAlister following severe forms of sexual harassment maintained the hostile work environment.

62. Ms. McAlister was harmed by the discrimination through loss of her position, including the compensation and benefits, the costs incurred in participating in the training and social and emotional impact of having to training in an environment, where she was not protected from severe sexual harassment except by losing her position and livelihood. The termination prevents her from working in her chosen profession - law enforcement.

## CLAIM III

### VIOLATION OF TITLE VII – RETALIATION: 42 U.S.C. §2000e-3(a)

63. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

64. The defendant State of Alaska, Department of Public Safety, acting through its agents discriminated against Ms. McAlister on the basis of her attempt to oppose unlawful employment practices.

65. Ms. McAlister's employment was terminated three days after reporting incidents of sexual harassment to her superiors.

66. The sexual harassment reports resulted in Ms. McAlister's termination of employment.

67. Ms. McAlister was harmed by the retaliation through loss of her employment including compensation and benefits, and social and emotional impact of losing

her position and livelihood.  The termination prevents her from working in her chosen profession - law enforcement.

## CLAIM IV

### VIOLATION OF 42 U.S.C. §1981 – EQUAL RIGHTS

68.  Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

69. Ms. McAlister had an employment contract with the State of Alaska, Department of Public Safety.

70. The defendant State of Alaska, Department of Public Safety, acting through its agents and the individual defendants Grant Miller, Brent Hatch, Lucas Altepeter, Nathan Duce, Sawyer Philbrick, Emily McArdle, and Taumaoe Malaki acted to deprive Ms. McAlister of equal rights under the law because of her race.  The State of Alaska, Department of Public Safety and Mr. Philbrick created a sexually hostile work environment thereby interfering with Ms. McAlister's benefits and conditions of her contractual relationship with the State of Alaska, Department of Public Safety.  The State and individual defendants retaliated against her because she reported sexual harassment by Mr. Philbrick.

71. The individual defendants acted with discriminatory animus when they provided false accusations and input, interrogated and threatened Ms. McAlister.  These actions ultimately led to adverse employment action against Ms. McAlister.

72. Ms. McAlister was harmed by the deprivation of her right to equal treatment based on her race, sex and her protected activity through loss of her position, including the compensation and benefits, the costs incurred in participating in the training and social and emotional impact of losing her position and livelihood. The termination prevents her from working in her chosen profession - law enforcement.

## CLAIM V

## VIOLATION OF 42 U.S.C. §1983 and U.S. CONSTITUTION, AMENDMENT XIV – EQUAL PROTECTION

73. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

74. At all times when taking adverse action against Ms. McAlister, the defendants were acting under color of state law. They were acting in their capacity as the State of Alaska, Department of Public Safety and employees of the State of Alaska, Department of Public Safety. The individual defendants were also acting in their individual capacities.

75. Mr. Philbrick made a deliberate choice to enter the female dorm wing of the building. He also made a deliberate choice to enter into the female locker room. He only had access to these areas by virtue of his position as an employee of the State of Alaska, Department of Public Safety.

76. Ms. McArdle and Ms. Malaki knew or reasonably should have known that their claims about Ms. McAlister cheating during the spelling event were false. They deliberately interfered with Ms. McAlister's employment by taking steps they knew or reasonably should have known would negatively impact her career and were likely to result in termination. Their false reports to the supervisors were accomplished while acting as employees of the State of Alaska, Department of Public Safety.

77. State of Alaska, Department of Public Safety, Grant Miller, Brent Hatch, Lucas Altepeter, Nathan Duce also made the deliberated choice to not remove Mr. Philbrick from having access to Ms. McAlister either through termination or removal from the Bravo squad. The individual defendants had the authority to maintain the sexually hostile work environment based on their employment status with the State of Alaska, Department of Public Safety.

78. State of Alaska, Department of Public Safety, Grant Miller, Brent Hatch, Lucas Altepeter, Nathan Duce made the choice to remove Ms. McAlister from employment based on a false claim of cheating and lying. They disregarded Ms. McAlister's civil rights when making the decision to terminate her following her report of the sexually hostile work environment.

79. When the State of Alaska, Department of Public Safety, Grant Miller, Brent Hatch, Lucas Altepeter and Nathan Duce took actions to investigate and terminate

Ms. McAlister they took deliberate action based on her race as Alaska Native, while acting as employees of the State of Alaska, Department of Public Safety.

80. Following the termination of Ms. McAlister, and in response to Ms. McAlister's grievance, the investigation conducted by State of Alaska, Department of Public Safety provided sufficient information to establish that the actions of the State of Alaska, Department of Public Safety, Grant Miller, Brent Hatch, Lucas Altepeter and Nathan Duce against Ms. McAlister were unwarranted, racially discriminatory, retaliatory and promoted a sexually hostile work environment. The defendants deliberately chose to do nothing to remedy the situation.

81. The defendants intentionally discriminated against Ms. McAlister on the basis of her race and sex.

82. These actions by the defendants deprived Ms. McAlister of her constitutionally protected right to equal protection under the law.

83. Ms. McAlister was harmed by the deprivation of her right to equal protection based on her race, sex and her protected activity through loss of her position, including the compensation and benefits, the costs incurred in participating in the training and social and emotional impact of losing her position and livelihood. The termination prevents her from working in her chosen profession - law enforcement.

CLAIM VI

## VIOLATION OF 42 U.S.C. §1985(3) – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

84. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

85. The individual defendants, Grant Miller, Brent Hatch, Lucas Altepeter, Nathan Duce, Sawyer Philbrick, Emily McArdle, and Taumaoe Malaki acting in their individual capacities and as agents of defendant State of Alaska, Department of Public Safety under color of law conspired together for the purpose of depriving Ms. McAlister of equal protection under the law and/or of equal privileges and immunities under the law.

86. Each of the defendants, motivated by race, sex and/or retaliatory animus toward Ms. McAlister committed one or more actions in furtherance of the conspiracy including but not limited to:

   a. Sawyer Philbrick repeatedly invading Ms. McAlister's privacy in a manner such that a reasonable person in Ms. McAlister's position would be embarrassed, humiliated and fearful so as to create a sexually hostile work environment. In his meetings with Grant Miller, Brent Hatch, Lucas Altepeter and Nathan Duce they agreed that he would not be terminated nor removed from Bravo squad.

   b. Grant Miller, Brent Hatch, Lucas Altepeter and Nathan Duce, with knowledge of Mr. Philbrick's privacy invasions, agreed to allow Mr. Philbrick continued

access to Ms. McAlister and failed to take reasonable measures to prevent the sexually hostile work environment for Ms. McAlister.

c.  Instead, defendants Grant Miller, Brent Hatch, Lucas Altepeter and Nathan Duce engaged in a concerted campaign in meetings with one another and Ms. McAlister to retaliate against Ms. McAlister by accusing, interrogating, threatening and then terminating her employment following her report of the sexually hostile work environment.

d.  Emily McArdle and Taumaoe Malaki supported the conspiracy by making false claims to Grant Miller, Brent Hatch, Lucas Altepeter and Nathan Duce that Ms. McAlister cheated during the squad competition on August 6, 2021.

e.  Emily McArdle, Taumaoe Malaki, Grant Miller, Brent Hatch, Lucas Altepeter and Nathan Duce, through meetings and discussions with one another, concocted a scheme to discriminate against Ms. McAlister on the basis of race by manufacturing a false claim about her.  They acted in concert to falsely accuse her, interrogate her, threaten her and terminate her employment thereby removing her and the only other Alaska Native trainee based on accusations of cheating and lying during the squad competition on August 6, 2021.  The defendants knew that numerous Non-Native Alaskan recruits actually did cheat and/or lie with respect to the same competition and received no adverse consequences.

87. Through the actions of the defendants Ms. McAlister was deprived of her constitutional right to equal protection under the law and/or of equal privileges and immunities under the law.

88. Ms. McAlister was harmed by the deprivation of her right to equal protection and/or of equal privileges and immunities based on her race, sex and her protected activity through loss of her position, including the compensation and benefits, the costs incurred in participating in the training and social and emotional impact of losing her position and livelihood. The termination prevents her from working in her chosen profession - law enforcement.

CLAIM VII

PUNITIVE DAMAGES

89. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

90. The defendants, acting in their individual capacities and as agents of the State of Alaska, Department of Public Safety acted maliciously against Ms. McAlister and/or against her rights.

91. The defendant State of Alaska, Department of Public Safety, acting through its agents and the individual defendants Grant Miller, Brent Hatch, Lucas Altepeter, Nathan Duce, Sawyer Philbrick, Emily McArdle, and Taumaoe Malaki acted maliciously and outrageously in obtaining/allowing male access to Ms. McAlister in vulnerable states (sleeping in women's dorm/undressed in women's locker

room), manufacturing and supporting false reasons to terminate her, treating her abusively during interrogation, threatening her, humiliating her and in terminating her employment.

92. The actions taken by the defendants causing sexual harassment, race discrimination and retaliation following her efforts challenging the sexually hostile working environment constituted malicious conduct and conscious disregard of her rights.

DEMAND FOR JURY TRIAL

Ms. McAlister requests a jury trial on all issues so triable.

REQUEST FOR RELIEF

Ms. McAlister requests the following relief:

A. For an injunction and equitable relief under 42 U.S.C. §2000e-5(g). This includes enjoining the State of Alaska Department of Public Safety from continuing to discriminate against and exclude Alaska Native people, women and people who engage in protected activity.

B. Equitable relief in the form of expungement of negative employment history generated by the defendants. Reinstate Ms. McAlister under 42 U.S.C. §2000e-5(g)(1).

C. Provide Back Pay to Ms. McAlister for the period of time she was terminated until reinstatement less any mitigation Ms. McAlister received through reasonable diligence under 42 U.S.C. §2000e-5(g)(1).

D. Award Ms. McAlister her economic damages necessary to make her whole in an amount to be proven at trial.

E. Award Ms. McAlister compensatory damages in an amount to be proven at trial.

F. An award of punitive damages in an amount to be proven at trial.

G. Require each employee of the State of Alaska Department of Public Safety to undergo mandatory E.E.O. training to prevent this from ever happening again.

H. Enter a final judgment in favor of Ms. McAlister which (i) declares her the prevailing party, (ii) grants her leave to move for the maximum amount of attorney fees and costs available under 42 U.S.C. §2000e-5(k) and §12205, (iii) grants her the maximum amount of pre-judgment and post-judgment interest allowed by law and (iv) grants any other relief the Court determines is just and proper under these circumstances.

Dated this 9th day of February, 2023

/s/ Nicholas Kittleson
Nicholas Kittleson
ABA 9711090
Attorney for the plaintiff
5976 Muirwood Drive
Anchorage, Alaska 99502
(907) 345-0830
nicholas@gci.net