IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


DENALY MCALISTER,                    )
                                     )
                        Plaintiff,   )
                                     )
        vs.                          )
                                     )
STATE OF ALASKA, DEPARTMENT OF       )
PUBLIC SAFETY, et al.,               )
                                     )
                        Defendants.  )        No. 3:23-cv-0029-HRH
_____    )


O R D E R

Partial Motion to Dismiss

        Defendants the State of Alaska, Department of Public Safety ("DPS"), Grant Miller,

Brent Hatch, Lucas Altepeter, and Nathan Duce[1] move to dismiss some of plaintiff's claims

against them.[2]  This motion is opposed by plaintiff.[3]  Oral argument was not requested and

is not deemed necessary.

_____

        [1]Any reference herein to "defendants" is to these five defendants and does not include
defendants Sawyer Philbrick, Emily McArdle, and Taumaoe Malaki.

        [2]Docket No. 7.

        [3]Docket No. 12.

<u>Background</u>

Plaintiff, who is Alaska Native, alleges that "[o]n May 7, 2021, [she] was hired as a State Trooper Recruit by the State of Alaska, Department of Public Safety."[4] Plaintiff alleges that her first day at the Training Academy was July 25, 2021, and on that day defendant "Miller ... told [recruits] that anyone caught lying, stealing or cheating would be removed from the program."[5] Plaintiff also alleges that recruits were told that day "to stay out of the rooms of the opposite gender."[6]

Plaintiff alleges that "[o]n or about July 29, 2021," defendant Philbrick "came into the female wing of the dormitories during free time" and observed her while she was napping.[7] Plaintiff further alleges that "[o]n August 3, 2021," Philbrick "entered the women's locker room unannounced" while she and defendant Malaki "were undressed."[8] Plaintiff alleges that she and Malaki reported this incident "through their chain of command and were interviewed by the training facility staff," including Miller, Hatch, and Duce.[9] Plaintiff alleges that she reported the nap incident which also involved Philbrick during these

---

[4]Complaint at 3-4, ¶¶ 14, 21, Docket No. 1.

[5]<u>Id.</u> at 5, ¶ 24.  Miller was the Academy Commander.  <u>Id.</u> at 2, ¶ 3.

[6]<u>Id.</u> at 5, ¶ 24.

[7]<u>Id.</u> at 5-6, ¶ 26.

[8]<u>Id.</u> at 6, ¶ 28.

[9]<u>Id.</u>  Hatch and Duce were instructors at the Academy.  <u>Id.</u> at 2, ¶¶ 4, 6.

interviews.[10]  Plaintiff alleges that "Altepeter was also involved when the female recruits were briefed about the situation later the same day."[11]  Plaintiff alleges that defendants "took insufficient (or possibly no) action against" Philbrick.[12]

Plaintiff alleges that "[o]n August 6, 2021, "a squad competition" was held which required recruits to run "across the grinder and assum[e]" a "pushup position next to the corporals.  The corporals would give a spelling word and the recruits had to spell the word using the police phonetic alphabet...."[13]  Plaintiff alleges that "[p]art way through the competition Corporal Hatch yelled to the recruits that they were not to be sharing their words with teammates.  At no time did [plaintiff] share her words with her teammates."[14]  Plaintiff alleges that at one point during the competition, she misspelled a word and then "berated herself under her breath for missing the word.  She did not give the word to anyone."[15]  Plaintiff alleges that "[o]n one of her runs," Hatch asked her if she was sharing the spelling

---

[10]Id. at 6, ¶ 28.

[11]Id.  Altepeter was an instructor at the Academy.  Id. at 2, ¶ 5.

[12]Id. at 7, ¶ 29.

[13]Id. at 7, ¶ 30.

[14]Id. at 7, ¶ 31.

[15]Id. at 7, ¶ 32.

-3-

words and she told him she was not.[16]  Plaintiff alleges that Altepeter was present during this exchange.[17]

Plaintiff alleges that

> [a]fter the competition, Cpl. Hatch asked everyone to write on a 3x5 card whether 1) they heard anyone talking about the spelling words, 2) they talked with anyone about the spelling words, and 3) if they were soliciting with others about the spelling words.  The recruits handed the completed 3x5 cards to Cpl. Hatch.  [Plaintiff] answered honestly "no" to each question.[[18]]

Plaintiff alleges that after the recruits handed in their cards, several of them were called in to speak with Altepeter and Duce.[19]  Plaintiff alleges that she "and the only other Alaska Native recruit, Cody Paniptchuk, were among the" recruits who were called in.[20]  Plaintiff alleges that when she was called in, Altepeter asked her "why she lied on her 3x5 card" and she told him that "she did not lie.  The only time she said a word out loud was to chastise herself for missing it."[21]  Plaintiff alleges that "Altepeter would not let [her] finish her explanation[,]" that "[h]e continuously interrupted her[,]" and that "[h]e accused [her]

---

[16]Id. at 7, ¶ 33.

[17]Id. at 8, ¶ 33.

[18]Id. at 8, ¶ 34.

[19]Id. at 8, ¶ 35.

[20]Id.

[21]Id. at 8, ¶ 36.

of lying or having a psychotic break."[22]  Plaintiff alleges that Altepeter and Duce left her "alone [in] the room for periods of approximately a half an hour" and "[t]hen they would return and Cpl. Altepeter would start again with the accusations."[23]  Plaintiff alleges that "[a]fter keeping her isolated in the interrogation room for several hours, Cpl. Altepeter threatened that if she did not confess, he was going to order a psyche evaluation."[24]  Plaintiff alleges that she "understood that she was not going to be allowed to leave until she agreed with the accusations.  So finally she said, 'Sure, whatever[,] when Cpl. Altepeter repeated the accusations."[25]  Plaintiff alleges that "Duce witnessed the whole event and never stopped Cpl. Altepeter from interrogating [her] or otherwise objected that Cpl. Altepeter's behavior toward [her] was inappropriate."[26]  Plaintiff alleges that Altepeter told her "that Mr. Paniptchuk was also going to be dismissed ... for dishonesty" even though "Paniptchuk had not yet been interviewed."[27]

---

[22]Id.

[23]Id.

[24]Id. at 9, ¶ 38.

[25]Id.

[26]Id. at 8, ¶ 37.

[27]Id. at 9, ¶ 39.

-5-

Plaintiff alleges that her "employment was terminated" on August 6, 2021, "based on a false claim that she had cheated during a competition ... and lied about it."[28] Plaintiff alleges that Paniptchuk was also terminated that same day based on allegations that he too had "cheated during the competition and" lied about it "on his 3x5 card."[29] Plaintiff alleges that "[e]ighteen other recruits who were not Alaska Native admitted to engaging in some form of cheating during the [grinder] competition" but that many of these recruits "were not investigated and none were terminated despite the DPS's written policy that termination is automatic for cheating."[30]

On February 9, 2023, plaintiff commenced this action. In her complaint, plaintiff asserts seven claims. Claim I is a Title VII racial discrimination claim which appears to be asserted against the DPS. Claim II is a Title VII sexual discrimination/hostile work environment claim which appears to be asserted against the DPS, but Claim II also mentions Miller, Hatch, Altepeter, and Duce. Claim III is a Title VII retaliation claim which appears to be asserted against the DPS. Claim IV contains Section 1981 discrimination and retaliation claims asserted against all defendants. It is not entirely clear whether these claims are asserted against Miller, Hatch, Altepeter, and Duce in their official or individual capacities or both. Claim V contains Section 1983 equal protection claims asserted against

---

[28] Id. at 9, ¶ 40.

[29] Id. at 9, ¶ 41.

[30] Id. at 9, ¶ 42.

-6-

all defendants. These claims are asserted against Miller, Hatch, Altepeter, and Duce in both their official and individual capacities. Claim VI contains Section 1985(3) conspiracy claims asserted against all the individual defendants. These claims appear to be asserted against Miller, Hatch, Altepeter, and Duce in both their official and individual capacities. Claim VII contains punitive damages claims asserted against all defendants. In her prayer for relief, plaintiff seeks back pay, injunctive relief, equitable relief, and economic, compensatory, and punitive damages.

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss some of the claims asserted against them.

Discussion

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A plausible claim includes 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting United States v. Corinthian Colls., 655 F.3d 984, 991 (9th Cir. 2011)). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Ashcroft v. Iqbal,

-7-

556 U.S. 662, 678 (2009)).  "A complaint 'that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'"  <u>Benavidez</u>, 993 F.3d at 1145 (quoting <u>Iqbal</u>, 556 U.S. 662 at 678).  "Thus, 'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.'"  <u>Id.</u> (quoting <u>Adams v. Johnson</u>, 355 F.3d 1179, 1183 (9th Cir. 2004)).  "In assessing dismissal of claims pursuant to Rule 12(b)(6) ..., the court must 'accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'"  <u>Id.</u> at 1144 (quoting <u>Manzarek v. St. Paul Fire & Marine Ins. Co.</u>, 519 F.3d 1025, 1031 (9th Cir. 2008)).

<u>Claims I, II, and III (Title VII claims)</u>

Defendants move to dismiss plaintiff's Title VII claims against Miller, Hatch, Altepeter, and Duce.  However, in her opposition to the instant motion, plaintiff clarified that her "Title VII claims are only asserted against the" DPS.[31]  **Because the Title VII claims have not been asserted against Miller, Hatch, Altepeter, and Duce, defendants' motion to dismiss plaintiff's Title VII claims (Claims I, II, and III) against Miller, Hatch, Altepeter, and Duce is denied.**

<u>Claim IV (Section 1981 claims)</u>

Section 1981 "prohibits racial discrimination in the making and enforcement of contracts," including employment contracts.  <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 977 (9th Cir. 2004).  Section "1981 encompasses retaliation and hostile work environment

---

[31]Opposition to Partial Motion to Dismiss at 1, Docket No. 12.

claims," <u>Manatt v. Bank of America, NA</u>, 339 F.3d 792, 795 (9th Cir. 2003), as well as claims of racial disparate treatment. <u>Mays v. United Association Local 290 Apprenticeship and Journeymen Training Trust Fund</u>, 407 F.Supp.3d 1121, 1143 (D. Or. 2019).

Plaintiff alleges that defendants discriminated and retaliated against her in violation of Section 1981 because of her "race, sex, and her protected activity[,]" which was the reporting of the alleged "sexual harassment by Mr. Philbrick."[32] But, Section 1981 "does not protect against discrimination on the basis of gender...." <u>Sagana v. Tenorio</u>, 384 F.3d 731, 738 (9th Cir. 2004). Thus, **plaintiff's Section 1981 claims which are based on allegations that she was subjected to sexual discrimination either in the form of disparate treatment or a hostile work environment are not plausible, and these claims against defendants are dismissed without leave to amend because amendment would be futile.**

Defendants next move to dismiss plaintiff's Section 1981 racial discrimination and retaliation claims against the DPS because "§ 1981 does not contain a cause of action against states." <u>Pittman v. Oregon, Employment Dep't</u>, 509 F.3d 1065, 1074 (9th Cir. 2007). Because the DPS is an arm of the state, this would apply equally to the DPS. <u>Kievit v. Arizona Bd. of Regents</u>, Case No. CV–09–1673–PHX–GM, 2010 WL 749927, at *2 (D. Ariz. March 4, 2010). Thus, **plaintiff's Section 1981 racial discrimination and retaliation claims against the DPS are not plausible, and these claims against the DPS are dismissed without leave to amend because amendment would be futile.**

_____

[32]Complaint at 14-15, ¶¶ 70, 72, Docket No. 1.

Defendants next move to dismiss plaintiff's Section 1981 racial discrimination and retaliation claims for money damages against Miller, Hatch, Altepeter, and Duce in their official capacities. "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.'" Id. (quoting Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989)). Thus, Section 1981 claims against state officials in their official capacities "fail because '§ 1981 does not contain a cause of action against states.'" Id. (quoting Pittman, 509 F.3d at 1074).

Plaintiff makes no argument in response other than to point out that prospective injunctive relief against Miller, Hatch, Altepeter, and Duce in their official capacities is available under Section 1981. See Millia Promotional Services v. Ariz. Dep't of Econ. Sec., --- F.Supp.3d ---, 2023 WL 155849, at *4 (D. Ariz. 2023) ("[a]gency officials [may be] sued in their official capacities for prospective injunctive relief"). Defendants do not dispute this point and in their opening brief did not move to dismiss plaintiff's Section 1981 claims for prospective injunctive relief against Miller, Hatch, Altepeter, and Duce in their official capacities. However, in their reply brief, defendants question whether injunctive relief would be available against Miller, Hatch, Altepeter, and Duce. Defendants suggest that Miller, Hatch, Altepeter, and Duce are not in positions of authority such that they could give plaintiff the injunctive relief she requests.

Defendants' argument fails. In her prayer for relief, plaintiff has requested that defendants be enjoined from discriminating against Alaska Native people and from

-10-

retaliating against persons who engage in protected activity. This is relief the court could grant against the individual defendants were plaintiff to prevail on her Section 1981 racial discrimination and retaliation claims. Thus, **plaintiff's Section 1981 racial discrimination and retaliation claims for prospective injunctive relief against Miller, Hatch, Altepeter, and Duce in their official capacities survive the instant motion and are not dismissed. But, plaintiff's Section 1981 racial discrimination and retaliation claims for money damages against Miller, Hatch, Altepeter, and Duce in their official capacities are dismissed. These claims are dismissed without leave to amend because amendment would be futile.**

As set out above, it is not clear from plaintiff's complaint whether the Section 1981 claims against Miller, Hatch, Altepeter, and Duce were asserted against them in their individual capacities as well. In their opening brief, defendants took the position that plaintiff had not asserted Section 1981 claims against these defendants in their individual capacities.[33] In her opposition, plaintiff does not expressly state that she has asserted Section 1981 claims against Miller, Hatch, Altepeter, and Duce in their individual capacities. But, she does point out that a state actor who is sued in his individual capacity can be liable under Section 1981, which is a correct statement of law. See Magassa v. Mayorkas, 52 F.4th 1156, 1162 (9th Cir. 2022) ("district court had jurisdiction to consider a § 1981 claim against [defendant] in his individual capacity").

---

[33]Partial Motion to Dismiss at 13, n.70, Docket No. 7.

-11-

The court finds that plaintiff's complaint can fairly be read as asserting Section 1981 racial discrimination and retaliation claims against Miller, Hatch, Altepeter, and Duce in their individual capacities. Because defendants have not presented any argument as to why these claims should be dismissed, **plaintiff's Section 1981 claims for racial discrimination and retaliation against Miller, Hatch, Altepeter, and Duce in their individual capacities survive the instant motion and are not dismissed.**

Claim V (Section 1983 claims)

"Section 1983 creates a cause of action for the vindication of federal rights." Cholla Ready Mix, 382 F.3d at 978. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "'To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). Plaintiff alleges that "defendants intentionally discriminated against [her] on the basis of her race and sex" and that their actions in terminating her and failing to deal with Philbrick after she reported his

-12-

harassment "deprived [her] of her constitutionally protected right to equal protection under the law."[34]

Defendants first move to dismiss plaintiff's Section 1983 claims against the DPS. Although "Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution[,]'" 42 U.S.C. § 1983, "[s]tates or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes are not 'persons' under § 1983.'" Cornel v. Hawaii, 37 F.4th 527, 531 (9th Cir. 2022) (quoting Doe v. Lawrence Livermore Nat'l Lab'y, 131 F.3d 836, 839 (9th Cir. 1997)).  Thus, **plaintiff's Section 1983 claims against the DPS are not plausible and are dismissed without leave to amend because amendment would be futile.**

Defendants next move to dismiss plaintiff's Section 1983 claims for money damages against Miller, Hatch, Altepeter, and Duce in their official capacities because a state's "'officials sued in their official capacity are not considered 'persons' within the meaning of § 1983.'" Wolfe v. Strankman, 392 F.3d 358, 364 (9th Cir. 2004) (quoting Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2002)).  Plaintiff makes no argument in response other than to point out that prospective injunctive relief against Miller, Hatch, Altepeter, and Duce in their official capacities is available under Section 1983.  Cornel, 37 F.4th at 531.  Defendants do not dispute this point and in their opening brief, they did not

---

[34]Complaint at 17, ¶¶ 81-82, Docket No. 1.

move to dismiss plaintiff's Section 1983 claims for prospective injunctive relief against Miller, Hatch, Altepeter, and Duce in their official capacities.  However, in their reply brief, they question whether injunctive relief would be available against Miller, Hatch, Altepeter, and Duce.  Defendants suggest that Miller, Hatch, Altepeter, and Duce are not in positions of authority such that they could give plaintiff the injunctive relief she requests.

Defendants' argument fails for the same reason it failed in connection with plaintiff's Section 1981 claims for prospective injunctive relief.  Thus, **plaintiff's Section 1983 claims for prospective injunctive relief against Miller, Hatch, Altepeter, and Duce in their official capacities survive the instant motion and are not dismissed.  But, plaintiff's Section 1983 claims for money damages against Miller, Hatch, Altepeter, and Duce in their official capacities are not plausible and are dismissed without leave to amend because amendment would be futile.**

Defendants next move to dismiss plaintiff's Section 1983 claims against Miller, Hatch, Altepeter, and Duce in their individual capacities on the basis of qualified immunity. The doctrine of qualified immunity applies in Section 1983 actions.  Ballentine v. Tucker, 28 F.4th 54, 61 (9th Cir. 2022).  This doctrine "'shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Sabra v. Maricopa Cnty. Community College Dist., 44 F.4th 867, 886 (9th Cir. 2022) (quoting Saved Mag. v. Spokane Police Dep't, 19 F.4th 1193, 1198 (9th Cir.

-14-

2021)). "A federal or state official is entitled to qualified immunity 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). The court may address either prong of the qualified immunity analysis first. Id. "Addressing the second prong before the first is especially appropriate where 'a court will rather quickly and easily decide that there was no violation of clearly established law.'" Id. (quoting Jessop v. City of Fresno, 936 F.3d 937, 940 (9th Cir. 2019)). The issue of qualified immunity should be resolved "'at the earliest possible stage in litigation.'" Id. at 892 (quoting Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010)). But, "a Rule 12(b)(6) dismissal based on qualified immunity 'is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies....'" Id. (quoting O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016)).

As set out above, plaintiff has asserted Section 1983 equal protection claims based on both her race and her gender. Defendants argue that Miller, Hatch, Altepeter, and Duce are entitled to qualified immunity on both sets of equal protection claims.

As for plaintiff's Section 1983 racial equal protection claims, defendants argue that plaintiff has not adequately alleged that Miller, Hatch, Altepeter, and Duce violated her equal protection rights because of her race. Defendants argue that plaintiff has only made conclusory allegations that she was terminated because of her race and that she has not alleged any factual support for these conclusory allegations. Defendants argue that the only

-15-

factual allegation that plaintiff asserts in support of her contention that her termination was based on her race was that Paniptchuk, a male recruit who was also Alaska Native, was called in for questioning about his honesty during the grinder exercise and was also dismissed. Defendants argue that "[i]t is wholly conclusory to allege that, because both dismissed recruits are Alaska Native, Lt. Miller and Academy staff must have known they were violating the Equal Protection Clause when they dismissed them."[35]

Plaintiff, however, has adequately alleged that her racial equal protection rights were violated in connection with her termination. She alleged that the only two recruits who were Alaska Native and alleged to have cheated during the grinder exercise were terminated while non-Alaska Native recruits who also allegedly cheated were not terminated. It is plausible, based on the allegations in plaintiff's complaint, that her equal protection rights were violated because of her race.

As for the second prong of the qualified immunity analysis, "the dispositive inquiry in the clearly-established analysis is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted, based on the law at the time." Sandoval v. Cnty. of San Diego, 985 F.3d 657, 672 (9th Cir. 2021) (citation omitted). Any reasonable officer would have known in 2021 that it was unlawful to terminate someone because she was Alaska Native. Thus, **Miller, Hatch, Altepeter, and Duce are not entitled to qualified immunity on plaintiff's Section 1983 racial equal protection claims which have been**

---

[35]Partial Motion to Dismiss at 16-17, Docket No. 17.

-16-

**asserted against them in their individual capacities. Plaintiff's Section 1983 racial equal protection claims against Miller, Hatch, Altepeter, and Duce in their individual capacities survive the instant motion and are not dismissed.**

As for plaintiff's Section 1983 gender equal protection claims, plaintiff has not adequately alleged that Miller, Hatch, Altepeter, and Duce violated her equal protection rights because of her gender. Based on plaintiff's allegations in her complaint, it is not plausible that her gender equal protection rights were violated when she was terminated because she has alleged that a male recruit was also terminated. Plaintiff's allegations that her equal protection rights were violated in connection with the Philbrick incidents are also inadequate. She has alleged that nothing was done after she reported Philbrick's harassment but she has not alleged that male recruits who reported sexual harassment were treated differently. She has also alleged that defendants allowed a sexually hostile work environment to exist but she has not alleged any facts that suggest that defendants handled the situation with Philbrick any differently than they would have had plaintiff not been female. Because plaintiff has not adequately alleged that Miller, Hatch, Altepeter, and Duce violated her equal protection rights because of her gender, **plaintiff's Section 1983 gender equal protection claims against Miller, Hatch, Altepeter, and Duce in their individual capacities are dismissed. These claims are dismissed with leave to amend because it is possible that plaintiff could plead the necessary factual support to make out a plausible violation of her gender equal protection rights.**

<u>Claim VI (Section 1985(3) conspiracy claims)</u>

Section 1985(3) "provides a cause of action if <u>two or more</u> persons conspire to deprive an individual of his constitutional rights." <u>Pasadena Republican Club v. Western Justice Center</u>, 985 F.3d 1161, 1171 (9th Cir. 2021). "The elements of a § 1985(3) claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy and (3) a resulting injury." <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1141 (9th Cir. 2000). "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 626 (9th Cir. 1988).

Plaintiff alleges that all of the individual defendants "conspired together for the purpose of depriving [her] of equal protection under the law and/or of equal privileges and immunities under the law."[36] Plaintiff alleges that the individual defendants, who were "motivated by race, sex and/or retaliatory animus[,]" took the following "actions in furtherance of the conspiracy[:]" agreeing not to terminate Philbrick after he repeatedly invaded plaintiff's privacy, failing to take "reasonable measures to prevent" Philbrick from continuing to harass plaintiff, deciding to retaliate against her for reporting Philbrick, making

---

[36]Complaint at 18, ¶ 85, Docket No. 18.

-18-

false claims about whether she cheated during the grinder exercise, and "concoct[ing] a scheme" to discriminate against her because of her race.[37]

These allegations are insufficient to state a plausible Section 1985(3) conspiracy claim. Plaintiff has not alleged any factual support for her allegation that the individual defendants agreed to take any of the actions she alleges were done in furtherance of the conspiracy. Vague allegations of meetings and discussions are not enough. Plaintiff has also alleged no facts that suggest that the individual defendants agreed to anything related to Philbrick's alleged acts of entering the women's dorm and locker room or that they agreed that some of them would make false claims against her so that the others could terminate her. All plaintiff has done is allege that there was a conspiracy. She has failed to allege any specific factual detail to support this allegation. Thus, **plaintiff's Section 1985(3) conspiracy claims against Miller, Hatch, Altepeter, and Duce in their official and/or individual capacities are not plausible, and these claims are dismissed.**

**Plaintiff is not given leave to amend her Section 1985(3) conspiracy claims for money damages against Miller, Hatch, Altepeter, and Duce in their official capacities because such amendment would be futile**. "[C]ourts have held that the term 'person,' as used in section 1985, has the same meaning as 'person,' as used in section 1983." <u>Carmen v. San Francisco Unified School Dist.</u>, 982 F.Supp. 1396, 1404 (N.D. Cal. 1997). And, as

---

[37]<u>Id.</u> at 18-19, ¶ 86.

set out above, "'officials sued in their official capacity are not considered 'persons' within the meaning of § 1983.'" Wolfe, 392 F.3d at 364 (quoting Cortez, 294 F.3d at 1188).

**As for her Section 1985(3) claims for prospective injunctive relief against Miller, Hatch, Altepeter, and Duce in their official and/or individual capacities, plaintiff is given leave to amend.** Contrary to defendants' contention, this type of relief is available under Section 1985. Very few courts have considered this issue, and as defendants point out, one court has held that such "relief is unavailable under section 1985; the statutory remedy is limited to the recovery of damages." Cuban v. Kapoor Bros., Inc., 653 F.Supp. 1025, 1033 (E.D.N.Y. 1986). But, the majority of courts which have considered the issue have held that injunctive relief is available under Section 1985(3). See, e.g., Action v. Gannon, 450 F.2d 1227, 1237 (8th Cir. 1971) (holding that despite the fact that "[o]n its face, § 1985(3) provides only for an award of damages for violation of civil rights[,]" injunctive relief is available under Section 1985(3)); Mizell v. North Broward Hospital Dist., 427 F.2d 468, 473 (5th Cir. 1970) (same); Sherez v. State of Hawai'i Dep't of Educ., 396 F.Supp.2d 1138, 1143-44 (D. Hawai'i 2005) (holding that Eleventh Amendment does not bar 1985(3) claim seeking injunctive and declaratory relief); Werthman v. Illinois Dep't of Mental Health and Developmental Disabilities, 831 F.Supp. 625, 628 (N.D. Ill. 1993) (holding that the "plaintiff may proceed with her claims for injunctive relief pursuant to § 1983 and § 1985 against [defendants] in their official capacities"); Gaulter v. Capdeboscq, 404 F.Supp. 900, 904 (D. La. 1975) (holding that "[a]n injunction may properly issue on a cause of action founded on

-20-

42 U.S.C. § ...1985(3)); <u>Freeman and Bass, P.A. v. State of N.J. Commission of Investigation</u>, 359 F.Supp. 1053, 1059 (D.N.J. 1973) ("[a]lthough § 1985 does not on its face provide for injunctive relief, I cannot believe that a federal court is without jurisdiction to issue injunctive relief ... to provide permanent relief where damages do not provide an adequate remedy in a § 1985 action").

Finally, **plaintiff is given leave to amend her Section 1985(3) conspiracy claims for money damages against Miller, Hatch, Altepeter, and Duce in their individual capacities.** Defendants' argument that they are entitled to qualified immunity on these claims fails.

Defendants argue that, in August 2021, a reasonable officer would not have known that it was unlawful to conspire with other officers because it was not clearly established at that time whether the intracorporate conspiracy doctrine barred Section 1985(3) claims against employees of the same governmental entity. "Under" the "intracorporate-conspiracy doctrine[,] an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 153 (2017). The Supreme Court "ha[s] not given its approval to this doctrine in the specific context of § 1985(3)." <u>Id</u>. Similarly, the Ninth Circuit has never decided whether or not the intracorporate conspiracy doctrine applies in the Section 1985(3) context. In the most recent case to consider the issue, <u>Fazaga v. Federal Bureau of Investigation</u>, 965 F.3d 1015, 1060 (9th Cir. 2020), <u>reversed on other grounds by</u> 142 S.Ct. 1051 (2022), the Ninth

Circuit held that the officers in question were entitled to qualified immunity for alleged misconduct that occurred in 2006-2007 because at that time, "neither this court nor the Supreme Court had held that an intracorporate agreement could subject federal officials to liability under § 1985(3), and the circuits that had decided the issue were split."

Defendants argue that the same state of affairs remains today, that neither the Ninth Circuit nor the Supreme Court have "held that an intracorporate agreement can subject [state] officials to liability under § 1985(3), and the circuits that [have] decided the issue [are] split." Id. Thus, defendants argue that Miller, Hatch, Altepeter, and Duce are entitled to qualified immunity on plaintiff's Section 1985(3) claims for money damages against them in their individual capacities.

But, it is possible that the "personal stake exception" to the intracorporate immunity doctrine applies here. Under that exception, "the intracorporate immunity doctrine does not apply where a corporate 'officer has an independent personal stake in achieving the corporation's illegal objectives.'" ePlus Technology, Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002) (quoting Greenville Pub. Co. v. Daily Reflector, Inc., 496 F.2d 391, 399 (4th Cir.1974)). "In recent years, this 'personal stake exception' has been limited, such that it applies only where a co-conspirator possesses a personal stake independent of his relationship to the corporation." Id. (quoting Oksanen v. Page Mem'l Hosp., 945 F.2d 696, 705 (4th Cir.1991)). It is possible that, as plaintiff argues, the individual defendants were "acting out of their own personal [disdain] for [her], and they benefit[ted] by excluding her

-22-

... from their work environment."[38]  In other words, it is possible that plaintiff could plead that Miller, Hatch, Altepeter, and Duce were acting based on their personal animus rather than based on some official custom or policy such that the personal stake exception to the intracorporate immunity doctrine would apply in this case.

## Conclusion

Defendants' partial motion to dismiss is granted in part and denied in part.  The motion is denied as to

1) plaintiff's Title VII claims (Claims I, II, and III) against Miller, Hatch, Altepeter, and Duce;

2) plaintiff's Section 1981 racial discrimination and retaliation claims for prospective relief against Miller, Hatch, Altepeter, and Duce in their official capacities;

3) plaintiff's Section 1981 racial discrimination and retaliation claims against Miller, Hatch, Altepeter, and Duce in their individual capacities;

4) plaintiff's Section 1983 claims for prospective injunctive relief against Miller, Hatch, Altepeter, and Duce in their official capacities; and

5) plaintiff's Section 1983 racial equal protection claims against Miller, Hatch, Altepeter, and Duce in their individual capacities.

---

[38]Opposition to Partial Motion to Dismiss at 11, Docket No. 12.

-23-

The motion is granted as to

1) plaintiff's Section 1981 claims which are based on allegations of sex discrimination;

2) plaintiff's Section 1981 racial discrimination and retaliation claims against the DPS;

3) plaintiff's Section 1981 racial discrimination and retaliation claims for money damages against Miller, Hatch, Altepeter, and Duce in their official capacities;

4) plaintiff's Section 1983 claims against the DPS;

5) plaintiff's Section 1983 claims for money damages against Miller, Hatch, Altepeter, and Duce in their official capacities;

6) plaintiff's Section 1983 gender equal protection claims against Miller, Hatch, Altepeter, and Duce in their individual capacities; and

7) plaintiff's Section 1985(3) conspiracy claims against Miller, Hatch, Altepeter, and Duce in their official and/or individual capacities.

Plaintiff is given leave to amend as to

1) her Section 1983 gender equal protection claims against Miller, Hatch, Altepeter, and Duce in their individual capacities;

2) her Section 1985(3) conspiracy claims for prospective injunctive relief against Miller, Hatch, Altepeter, and Duce in their official and/or individual capacities; and

-24-

3) her Section 1985(3) conspiracy claims for money damages against Miller, Hatch, Altepeter, and Duce in their individual capacities.

Should plaintiff elect to file an amended complaint, plaintiff's amended complaint shall be filed on or before May 30, 2023.

DATED at Anchorage, Alaska, this 16th day of May, 2023.

/s/ H.Russel Holland
United States District Judge