IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DENALY MCALISTER,<br><br>                Plaintiff,<br><br>vs.<br><br>STATE OF ALASKA,<br>DEPARTMENT OF PUBLIC<br>SAFETY, *et al.*,<br><br>                Defendants. | Case No. 3:23-cv-00029-JMK<br><br>**ORDER REGARDING PENDING MOTIONS** |

Pending before the Court are three separate Motions to Dismiss. At Docket 31, Defendant Emily Jourdan moves to dismiss Plaintiff Denaly McAlister's claims against her. At Docket 34, Defendants State of Alaska, Department of Public Safety, Grant Miller, Brent Hatch, Lucas Altepeter, and Nathan Duce move to dismiss Ms. McAlister's amended Equal Protection and § 1985(3) claims. And, at Docket 49, Defendant Taumaoe Malaki moves to dismiss Ms. McAlister's claims against her. Each motion is fully briefed. The Court took them under advisement without oral argument.

As explained below, all three motions are **GRANTED**.

## I. BACKGROUND

This is a civil rights action arising from Plaintiff Denaly McAlister's termination from the Alaska State Trooper's Training Academy in August 2021.[1] Ms. McAlister alleges that the State of Alaska, the Department of Public Safety, and individual defendants—both Training Academy employees and trainee recruits who attended the Training Academy with Ms. McAlister—discriminated against her on the basis of her race and sex, retaliated against her for reporting harassment, and conspired to interfere with her civil rights.[2]

Ms. McAlister is a mixed-race woman who identifies as Alaska Native.[3] In 2021, Ms. McAlister was hired as a State Trooper Recruit by the State of Alaska, Department of Public Safety ("DPS").[4] She was accepted into Alaska's law enforcement training program ("the Training Academy") in Sitka, Alaska, and matriculated on July 25, 2021.[5] Ms. McAlister alleges she suffered discrimination in several ways while at the Training Academy.

First, Ms. McAlister alleges that she was subject to sexual harassment by another training recruit, Sawyer Philbrick.[6] On July 29, 2021, Mr. Philbrick, a male trainee, entered the female dormitory in violation of the Training Academy rules, observed Ms. McAlister while she was napping, and later commented to Ms. McAlister about seeing

---

[1] *See generally* Docket 29.
[2] *Id.* at ¶¶ 43–99.
[3] *Id.* at ¶ 1.
[4] *Id.* at ¶ 21.
[5] *Id.* at ¶¶ 22–24.
[6] *Id.* at ¶¶ 26–29, 49–62, 72–78.

McAlister v. State of Alaska et al.  Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions  Page 2
Case 3:23-cv-00029-JMK   Document 61   Filed 01/05/24   Page 2 of 20

her sleeping.[7] Then, on August 3, 2021, Mr. Philbrick entered the women's locker room while Ms. McAlister and another recruit were undressed.[8] The two women reported this incident and were interviewed by members of the Training Academy staff.[9] During these interviews, Ms. McAlister reported that Mr. Philbrick also had entered the female dormitory and observed her napping.[10]

Second, Ms. McAlister alleges that she suffered race discrimination and retaliation for reporting Mr. Philbrick's conduct after she was terminated from the Training Academy following false accusations that she cheated.[11] On August 6, 2021, Ms. McAlister participated in a training exercise in which she was required to spell words using the police phonetic alphabet while in a pushup position.[12] During the exercise, she was instructed that she was not to share the words with her teammates.[13] Ms. McAlister alleges that she misspelled a word and then chastised herself under her breath.[14] Instructors asked her whether she was sharing spelling words and, after the exercise, required the recruits to write on index cards whether they have heard anyone talking about the spelling words, talked themselves about the words, or had asked others about the words.[15] Ms. McAlister answered "no" to each question.[16] Instructors then asked several recruits,

---

[7] *Id.* at ¶ 26.
[8] *Id.* at ¶ 28.
[9] *Id.*
[10] *Id.*
[11] *Id.* at ¶¶ 43–48, 63–71, 78–82.
[12] *Id.* at ¶ 30.
[13] *Id.* at ¶ 31.
[14] *Id.* at ¶ 32.
[15] *Id.* at ¶¶ 33–34.
[16] *Id.* at ¶ 34.

McAlister v. State of Alaska et al.  Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions  Page 3

Case 3:23-cv-00029-JMK   Document 61   Filed 01/05/24   Page 3 of 20

including Ms. McAlister, to speak with them.[17]  When they spoke to Ms. McAlister, the instructors asked her why she had lied on her index card, left her isolated in a room for several hours, and threatened to order a psychologist to examine Ms. McAlister if she did not confess to lying.[18]  Ultimately, Ms. McAlister acquiesced and told the staff she had cheated because she understood she would not be allowed to leave until she did so.[19]

That same day, August 6, Ms. McAlister was terminated from her employment with the DPS because she had cheated in the exercise and lied about doing so on the index card.[20]  Although at least 18 other recruits admitted to cheating and DPS's written policy requires termination for cheating, only one individual besides Ms. McAlister—another Alaskan Native recruit—was terminated.[21]

Ms. McAlister brought a complaint to the Equal Employment Opportunity Commission and received a right to sue letter on November 16, 2022.  She initiated this action on February 9, 2023.[22]

## II.  LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

A party may move to dismiss an action where the federal court lacks subject matter jurisdiction.[23]  Furthermore, the Court must dismiss a case if it determines that it

---

[17] *Id.* at ¶ 35.
[18] *Id.* at ¶¶ 36–38.
[19] *Id.* at ¶ 38.
[20] *Id.* at ¶ 40.
[21] *Id.* at ¶¶ 41–42.
[22] Docket 1.
[23] *See* Fed. R. Civ. P. 12(b)(1).

*McAlister v. State of Alaska et al.*  Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions  Page 4
Case 3:23-cv-00029-JMK   Document 61   Filed 01/05/24   Page 4 of 20

lacks subject matter jurisdiction "at any time."[24] A party moving to dismiss for lack of subject matter jurisdiction may present either a facial attack or a factual attack.[25] "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[26] When reviewing a [facial] dismissal pursuant to Rule 12(b)(1) . . ., 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'"[27] "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[28] "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."[29] "Ultimately, the party seeking to invoke the federal court's jurisdiction bears the burden of establishing jurisdiction.[30]

**B.  Motion to Dismiss for Failure to State a Claim**

A party may move for dismissal when a plaintiff's complaint "fails to state a claim upon which relief can be granted."[31] To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, if taken as true, would state a

---

[24] Fed. R. Civ. P. 12(h)(3).
[25] See *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).
[26] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).
[27] *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (second alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).
[28] *Safe Air for Everyone*, 373 F.3d at 1039.
[29] *Id.*
[30] See *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997).
[31] Fed. R. Civ. P. 12(b)(6).

legal claim to relief that is "plausible on its face."[32] Conclusory statements, unwarranted inferences, and "[t]hreadbare recitals of the elements of a cause of action" will not defeat dismissal; a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33] In reviewing the motion to dismiss, the court construes all facts alleged in the complaint in the light most favorable to the plaintiff.[34] Dismissal for failure to state a claim is proper "if it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief."[35]

### III. DISCUSSION

The Court addresses each motion to dismiss in turn.

### A. Ms. Jourdan's Motion to Dismiss

Ms. Jourdan moves to dismiss Ms. McAlister's claims against her for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim. As explained below, Ms. Jourdan is immune from suit. The Court need not consider whether Ms. McAlister's complaint states a claim with respect to Ms. Jourdan.

Ms. Jourdan disputes the allegation that Ms. Jourdan was an agent of the State of Alaska.[36] Instead, Ms. Jourdan argues that she is a Village Public Safety Officer

---

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); accord *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).
[33] *Iqbal*, 556 U.S. at 678.
[34] *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)).
[35] *Laborers' Int'l Union of N. Am., Loc. 341 v. Main Bldg. Maint., Inc.*, 435 F. Supp. 3d 995, 1000 (D. Alaska 2020) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001)).
[36] Docket 31 at 10–14.

*McAlister v. State of Alaska et al.* Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions Page 6
Case 3:23-cv-00029-JMK Document 61 Filed 01/05/24 Page 6 of 20

("VPSO") employed by the Central Council of Tlingit & Haida Indian Tribes of Alaska ("Tlingit & Haida" or "the Tribe") and that she acted in her official capacity as a Tribal officer at the time of the conduct at issue in Ms. McAlister's complaint, and thus is immune from suit.[37] Ms. McAlister responds that Ms. Jourdan is not immune from suit because she did not act in her official capacity.[38]

Tribes are immune from suit unless they expressly waive their immunity or Congress abrogates it.[39] "[T]he issue of tribal sovereign immunity is [quasi-]jurisdictional."[40] When a defendant invokes Tribal sovereign immunity, the party seeking to assert jurisdiction bears the burden of proving sovereign immunity has been waived, abrogated, or does not apply.[41] Otherwise, the court must dismiss.[42] "Tribal sovereign immunity 'extends to tribal officials when acting in their official capacity and within the scope of their authority.'"[43] Tlingit & Haida, a federally-recognized Tribe, have not waived their immunity and Congress has not abrogated tribal sovereign immunity for § 1981, § 1983, or § 1985(3) claims.[44]

---

[37] *Id.* at 10–16.
[38] Docket 40 at 4–5.
[39] *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 725 (9th Cir. 2008) ("Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe.").
[40] *Pistor v. Garcia*, 791 F.3d 1104, 1110 (9th Cir. 2015) (alterations in original) (quoting *Pan Am. Co. v. Sycuan Band of Mission Indians,* 884 F.2d 416, 418 (9th Cir. 1989)).
[41] *Id.* at 1110–11.
[42] *Id.*
[43] *Cook*, 548 F.3d at 727 (quoting *Linneen v. Gila River Indian Community*, 276 F.3d 489, 492 (9th Cir. 2002)).
[44] *See* Docket 31-1 at ¶¶ 7–8 (indicating the Tribe has not waived immunity); *Barron v. Alaska Native Tribal Health Consortium*, 373 F. Supp. 3d 1232, 1242 (D. Alaska 2019) (Congress has not abrogated Tribal sovereign immunity with respect to § 1981 claims); *Stanko v. Oglala*

McAlister v. State of Alaska et al.            Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions            Page 7

Case 3:23-cv-00029-JMK    Document 61    Filed 01/05/24    Page 7 of 20

Ms. Jourdan is immune from suit in this instance because she was acting in her official capacity as a Tlingit & Haida VPSO when she participated in the training exercises at the Training Academy and reported to instructors that Ms. McAlister had cheated during a training exercise. Ms. Jourdan attended the Training Academy in her capacity as an employee of the VSPO, an entity that the Tribe operates as part of its government.[45] For the duration of the Training Academy's program, Ms. Jourdan was "on duty" as an employee and received a salary.[46] Indeed, successful completion of the Training Academy's program within two years of hire was a condition of Ms. Jourdan's retention as a VSPO.[47] Therefore, while completing the Training Academy's training activities and responding to instructor's orders, Ms. Jourdan was acting in her official capacity and within the scope of her authority.

Ms. McAlister argues that Ms. Jourdan was not acting in her official capacity when "making a false report that Ms. McAlister was cheating" because dishonesty is against Tribal policy.[48] Even assuming the truth of the allegation that Ms. Jourdan made a false report, Ms. Jourdan acted in her official capacity and within the scope of her authority as a VSPO when she followed Training Academy instructors' directions to report on cheating. A Tribal officer's alleged misconduct in the course of their official duties does

---

*Sioux Tribe*, 916 F.3d 694, 696–97 (8th Cir. 2019) (same with respect to § 1983); *Gallegos v. Jicarilla Apache Nation*, 97 F. App'x 806, 811 (10th Cir. 2003) (same with respect to § 1985).

[45] Docket 31-1 at ¶¶ 3–5.
[46] Docket 31-2 at ¶ 8.
[47] *Id.*
[48] Docket 40 at 5.

not place them outside the scope of their authority for purposes of sovereign immunity.[49] Regardless of the veracity of her report, Ms. Jourdan is cloaked with Tribal sovereign immunity and this Court lacks jurisdiction to entertain the claims against her.

**B.    State Defendants' Motion to Dismiss**

The State of Alaska, DPS, Grant Miller, Brent Hatch, Lucas Altepeter, and Nathan Duce (collectively "the State Defendants") move for dismissal of Ms. McAlister's amended § 1985(3) claim and § 1983 equal protection claim.

As explained below, the State Defendants' Motion is **GRANTED**.

**1.    Ms. McAlister fails to state a § 1985(3) claim**

The State Defendants argue that Ms. McAlister's First Amended Complaint does not resolve the deficiencies the Court identified in a prior order: that no factual allegations supported the conclusion that Mr. Miller, Mr. Hatch, Mr. Altepeter, and Mr. Duce (collectively "the individual State Defendants") agreed to anything with respect to Mr. Philbrick's entering the women's locker room or to make false claims against Ms. McAlister.[50] Ms. McAlister responds that the additional allegations in her amended complaint support the inference that the individual State Defendants conspired together.[51]

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly,

---

[49] *See*, e.g., *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 491–93 (9th Cir. 2002) (affirming dismissing of a complaint alleging a Tribal officer unlawfully detained plaintiffs on Tribal sovereign immunity grounds).
[50] Docket 34 at 3 (citing Docket 19 at 19).
[51] Docket 39 at 2–4.

any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."[52] To satisfy the first element, a plaintiff must show the existence of an agreement to deprive her of a protected right.[53] A "mere allegation of conspiracy without factual specificity is insufficient."[54] A plaintiff need not include allegations that show the existence of an express agreement, but they must plead conduct that allows the inference of a conspiracy.[55] Moreover, to satisfy the second element of the claim, a plaintiff must show that the conspiracy was "motivated by a purpose (malevolent or benign) directed specifically at" a protected class.[56] And, as the Court discussed in its prior order, a plaintiff seeking damages under § 1985(3) against individual members of the same entity likely is barred by the intracorporate conspiracy doctrine unless they can show an individual was acting out of personal animus.[57]

In its previous order, this Court determined that Ms. McAlister did not state a claim for a § 1985(3) conspiracy to interfere with civil rights because she had failed to allege facts to support the first element of the § 1985(3) claim—a conspiracy to deprive

---

[52] *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983).
[53] *See Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998).
[54] *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).
[55] *Scott*, 140 F.3d at 1284 (citing *Ward v. Equal Employment Opportunity Comm'n,* 719 F.2d 311, 314 (9th Cir. 1983)).
[56] *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993).
[57] Docket 19 at 21–23 (citing *ePlus Technology, Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002)).

*McAlister v. State of Alaska et al.*     Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions     Page 10
Case 3:23-cv-00029-JMK    Document 61    Filed 01/05/24    Page 10 of 20

her of a protected right.[58] Reviewing Ms. McAlister's complaint, the Court found that it did not sufficiently allege facts that showed that the individual State Defendants had agreed to anything related to Mr. Philbrick's alleged entering of the women's dorm and locker room or that they had agree to make false claims against her.[59]

In her First Amended Complaint, Ms. McAlister added two sentences to remedy this deficiency. She notes that the individual State Defendants "were aware that Emily Jourdan and Taumaoe Malaki manufactured the false accusation" that Ms. McAlister cheated and that "[t]heir notes taken on the day of the competition show that neither Ms. Jourdan nor Ms. Malaki could identify a spelling word that Ms. McAlister disclosed."[60] Ms. McAlister argues that these allegations allow the Court to infer a conspiracy existed, as the Training Academy staff had no reason to credit Ms. Jourdan and Ms. Malaki's accusations when they could not identify the spelling word Ms. McAlister disclosed rather than accept Ms. McAlister's statement that she did not cheat.[61]

These additional allegations are insufficient to remedy the flaw the Court identified with Ms. McAlister's § 1985(3) claim against the individual defendants. In effect, Ms. McAlister posits that the Training Academy staff members conspired to deprive Ms. McAlister of her rights because they accepted weak or false allegations of cheating. Standing alone, these allegations do not plausibly suggest that the Training Academy staff made an agreement of any sort. Furthermore, they do not allow an inference that there was

---

[58] Docket 19 at 18–21.
[59] Id.
[60] Docket 29 at ¶ 97.
[61] Docket 39 at 2.

McAlister v. State of Alaska et al.  
Order Regarding Pending Motions  
Case No. 3:23-cv-00029-JMK  
Page 11  
Case 3:23-cv-00029-JMK   Document 61   Filed 01/05/24   Page 11 of 20

an agreement "motivated by a purpose . . . directed specifically at" a protected class or by personal animus.[62] Finally, absent any factual matter to support them, Ms. McAlister's inclusion of conclusory statements that the State Defendants acted out of animus in her complaint do not defeat dismissal.[63]

Ms. McAlister has not adequately pled at least two elements of her § 1985(3) claim: a conspiracy and invidious motivation. Accordingly, Ms. McAlister's § 1985(3) against the individual State Defendants is **DISMISSED**.

### 2. Ms. McAlister's gender equal protection claim fails

Next, the State Defendants argue that Ms. McAlister's Equal Protection claim fails to address the issues identified Court's prior order as it does not show how Ms. McAlister was treated differently from persons similarly situated.[64]

Ms. McAlister responds that she cannot show that the State Defendants handled her complaints about Mr. Philbrick any differently than it does sexual harassment complaints by male recruits because there are no known complaints of a woman entering any male dormitory or bathroom.[65] But she argues that Ms. McAlister was nonetheless subject to a hostile work environment and that, even if a policy forbidding opposite sex entrance into dorms and bathrooms went equally unenforced against men and women, it

---

[62] *Bray*, 506 U.S. at 270.
[63] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring a plaintiff "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also* Docket 29 at ¶¶ 81, 92, 97.
[64] Docket 34 at 5–6.
[65] Docket 39 at 4.

*McAlister v. State of Alaska et al.*                                                          Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions                                       Page 12
Case 3:23-cv-00029-JMK    Document 61    Filed 01/05/24    Page 12 of 20

*McAlister v. State of Alaska et al.*      Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions      Page 12
Case 3:23-cv-00029-JMK    Document 61    Filed 01/05/24    Page 12 of 20

would result in unequal treatment because women non-enforcement creates a more threatening situation for women than men.[66]

The Equal Protection Clause requires the State to treat all similarly situated people equally.[67] To state an Equal Protection claim under § 1983, a plaintiff "must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against them based upon membership in a protected class."[68] "A plaintiff may establish discriminatory purpose by producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way."[69]

A plaintiff may use circumstantial evidence to demonstrate a discriminatory purpose under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[70] Under this "disparate treatment" framework, a plaintiff must show, among other things, that "similarly situated individuals outside her protected class were treated more favorably."[71]

A plaintiff also may bring a § 1983 Equal Protection claim based on a hostile work environment.[72] Courts apply the same standards in reviewing a hostile work environment claim under the Equal Protection Clause as they do when a plaintiff alleges a

---

[66] *Id.* at 5.
[67] See *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).
[68] *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (internal quotation marks and citations omitted) (alterations omitted).
[69] *Ballou v. McElvain,* 29 F.4th 413, 422 (9th Cir. 2022) (internal quotation marks and citations omitted) (alterations omitted).
[70] See *id.* (noting the framework applies to constitutional equal protection claims).
[71] *Id.*
[72] See *Bator v. State of Hawai'i,* 39 F.3d 1021, 1028 (9th Cir. 1994).

hostile work environment under Title VII.[73]  A hostile work environment exists when an employee (1) is "subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[74]  In addition, as in all equal protection claims, a plaintiff must show that discrimination was intentional.[75]

Ms. McAlister fails to state a gender-based Equal Protection claim under the "disparate treatment" framework.  She admits that she cannot identify any similarly situated individuals outside of her class that were treated differently and thus cannot show discriminatory purpose.[76]

She also fails to state a claim under a hostile work environment theory.  "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[77]  In evaluating whether a work environment is sufficiently hostile to be illegal discrimination, courts look at the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

---

[73] *See*, e.g., *Feingold v. New York*, 366 F.3d 138, 158–59 (2d Cir. 2004); *Williams v. Seniff*, 342 F.3d 774, 791 (7th Cir. 2003); *Cooper v. Cate*, No. 1:10-CV-899 AWI DLB, 2011 WL 5554321, at *6 n.9 (E.D. Cal. Nov. 15, 2011).
[74] *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017) (internal quotation marks and citations omitted).
[75] *Bator*, 39 F.3d at 1028 n.7 ("[A] plaintiff must show intentional discrimination and state action for equal protection claims (but not for Title VII claims) . . . .").
[76] Docket 39 at 4.
[77] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotation marks and citation omitted).

*McAlister v. State of Alaska et al.*  Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions  Page 14
Case 3:23-cv-00029-JMK   Document 61   Filed 01/05/24   Page 14 of 20

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[78] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[79]

Ms. McAlister alleges two incidents of harassment: first, that Mr. Philbrick entered the women's dormitory in violation of Academy policy while Ms. McAlister was sleeping, and later commented to her about it; and, second, that he entered the women's locker room in violation of policy while Ms. McAlister and a colleague were undressed. Although Mr. Philbrick's behavior was inappropriate, these two instances of harassment were relatively isolated, not "extremely serious," and were investigated.[80] Considering the totality of the circumstances, Mr. Philbrick's conduct was not sufficiently severe or pervasive to constitute an actionable hostile work environment.[81]

Ms. McAlister fails to adequately allege facts to support a gender-based § 1983 Equal Protection claim on a disparate treatment or hostile work environment theory. Her § 1983 claim against the individual State Defendants for gender-based discrimination is **DISMISSED**.

---

[78] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 2 (1993).
[79] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations and citations omitted).
[80] *Id.*; *see also* Docket 29 at ¶¶ 28–29.
[81] *See*, e.g., *Lavarias v. Hui O Ka Koa, LLC*, No. 06-00481 DAE-LEK, 2007 WL 3331866, at *5 (D. Haw. Nov. 7, 2007) (finding a single incident in which a man peeked into the women's bathroom while the plaintiff was partially undressed insufficient to constitute a hostile work environment); *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) (isolated incidents of "sexual horseplay" did not constitute a hostile work environment).

## C. Ms. Malaki's Motion to Dismiss

Finally, Defendant Taumaoe Malaki moves to dismiss Ms. McAlister's § 1981, § 1983, and § 1985(3) claims against her.[82]

### 1. Ms. McAlister fails to state a § 1981 claim against Ms. Malaki

Ms. Malaki argues that Ms. McAlister fails to state a § 1981 claim against her because she does not adequately allege that Ms. Malaki intentionally discriminated against her or that Ms. Malaki's allegedly false accusation that Ms. McAlister cheated was the "but-for" cause of her termination from the Training Academy.[83] Ms. McAlister insists that her First Amended Complaint sufficiently pleads that Ms. Malaki intentionally discriminated against her on the basis of race because it indicates that Ms. McAlister and the only other Alaskan Native recruit were terminated for cheating and her termination was based on Ms. Malaki's false accusation.[84] Furthermore, she contends that she adequately demonstrated that Ms. Malaki acted with animus because she included the statement that Ms. Malaki acted against her "because of her race" in her complaint.[85]

42 U.S.C. § 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security

---

[82] These are Claims VI, VII, and VIII in Ms. McAlister's First Amended Complaint.
[83] Docket 49 at 6–10.
[84] Docket 56 at 5.
[85] *Id.* at 6.

of persons and property as is enjoyed by white citizens." To state a claim under § 1981, a plaintiff must allege intentional discrimination on account of race.[86]

The allegations in Ms. McAlister's First Amended Complaint do not allow the inference that Ms. Malaki intentionally discriminated against her on the basis of her race. Ms. McAlister suggests that a factfinder could infer that Ms. Malaki was motivated by Ms. McAlister's race when she made an allegedly false accusation of cheating because the only two individual the Training Academy ultimately terminated for cheating were Alaskan Natives. Such an inference cannot be made. Ms. Malaki had no role in the Training Academy's termination decisions. Therefore, although the Training Academy's termination decisions impacted Alaskan Natives, there is no logical connection between this outcome and Ms. Malaki's accusation.

Furthermore, as the Court already has discussed, the inclusion of the conclusory assertion that an individual was motivated by racial or other animus does not defeat dismissal.[87] Ms. McAlister's bare allegation that Ms. Malaki acted "because of Ms. McAlister's race" is exactly the type of conclusory statement that this Court need not accept as true.[88]

Ms. McAlister fails to adequately allege that Ms. Malaki acted with the intent to discriminate on the basis of race. Her § 1981 claim against Ms. Malaki is **DISMISSED**.

---

[86] *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989).
[87] *Iqbal*, 556 U.S. at 678.
[88] *See id.* at 678–79.

McAlister v. State of Alaska et al. Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions Page 17
Case 3:23-cv-00029-JMK Document 61 Filed 01/05/24 Page 17 of 20

### 2. Ms. McAlister also fails to state a § 1983 claim against Ms. Malaki

Ms. Malaki next argues that Ms. McAlister's § 1983 claim against her, based on her allegedly false accusation that Ms. McAlister had cheated, fails. She submits that Ms. McAlister does not allege that Ms. Malaki acted with discriminatory animus, that she has immunity as a government official, and that there is no potential future injury that allows prospective injunctive relief, among other things.[89] Ms. McAlister responds to each argument.[90] As relevant here, she argues that she included Ms. Malaki in her allegation that Defendants acted based on racial animus.[91]

As the Court has discussed above, a plaintiff "must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against them based upon membership in a protected class" to state an Equal Protection claim under § 1983.[92]

Ms. McAlister's First Amended Complaint does not include any factual allegations that support the conclusion that Ms. Malaki acted with intent to discriminate when she made her allegedly false accusation that Ms. McAlister cheated. And, as the Court has stressed multiple times, the mere assertion that Ms. Malaki was motivated by racial or other animus is insufficient and does not allow her claim to survive dismissal. Accordingly, Ms. McAlister's § 1983 claim against Ms. Malaki is **DISMISSED**.

---

[89] Docket 49 at 10–16.
[90] Docket 56 at 8–15.
[91] *Id.* at 14–15.
[92] *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (internal quotation marks and citations omitted) (alterations omitted).

*McAlister v. State of Alaska et al.*  Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions  Page 18
Case 3:23-cv-00029-JMK   Document 61   Filed 01/05/24   Page 18 of 20

### 3. Ms. McAlister fails to state a § 1985(3) claim against Ms. Malaki

Ms. Malaki moves to dismiss Ms. McAlister's § 1985(3) claim against her because she has not alleged that Ms. Malaki was part of a conspiracy.[93]

The Court has addressed Ms. McAlister's § 1985(3) claim above and concluded that Ms. McAlister did not plead allegations that plausibly suggested the Training Academy staff made an agreement with respect to Ms. McAlister's termination. The Court's discussion is equally applicable to the § 1985(3) claim against Ms. Malaki, as the new allegations it analyzed were aimed at Ms. Malaki as well as the individual State Defendants.[94] There are no factual allegations that allow an inference that Ms. Malaki conspired to deprive Ms. McAlister of her rights or made any agreement with respect to Ms. McAlister by making a false accusation. Ms. McAlister failed to allege an essential element of the § 1985(3) claim against Ms. Malaki. This claim is **DISMISSED**.

### IV. CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Ms. Jourdan's *Motion to Dismiss* is **GRANTED**. Ms. McAlister's claims against Ms. Jourdan are **DISMISSED**.

2. State Defendants' *Partial Motion to Dismiss* is **GRANTED**. Ms. McAlister's § 1985(3) claim against the individual State Defendants and her § 1983 gender Equal Protection claim against the State Defendants are **DISMISSED**.

---

[93] Docket 49 at 17–19.
[94] *See* Docket 29 at ¶ 97.

*McAlister v. State of Alaska et al.*                                        Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions                                  Page 19
Case 3:23-cv-00029-JMK    Document 61    Filed 01/05/24    Page 19 of 20
*McAlister v. State of Alaska et al.*     Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions     Page 19
Case 3:23-cv-00029-JMK    Document 61    Filed 01/05/24    Page 19 of 20

3. Malaki's *Motion to Dismiss* is **GRANTED**. Ms. McAlister's § 1981, § 1983, and § 1985(3) claims against Ms. Malaki are **DISMISSED**.

IT IS SO ORDERED this 5th day of January, 2023, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*McAlister v. State of Alaska et al.*     Case No. 3:23-cv-00029-JMK
Order Regarding Pending Motions     Page 20
Case 3:23-cv-00029-JMK    Document 61    Filed 01/05/24    Page 20 of 20